BROSNAN v. SACRED HEART UNIVERSITY, No. 333544 (Oct. 21, 1997)

SUSAN BROSNAN, ET AL. v. SACRED HEART UNIVERSITY, ET AL.

*1997 Ct. Sup. 9874, 20 CLR 509*

No. 333544

Superior Court

Judicial District of Fairfield

October 21, 1997

*MEMORANDUM OF DECISION*

LEVIN, J.

The issue before the court is whether an employee and her family may maintain an action in tort against the employee's employer and worker's compensation insurer for consequential damages arising out of the unreasonable contest of a workers' compensation claim and delay in paying workers' compensation benefits. This court holds that such a tort action is contrary to the overall scheme and intent of the workers' compensation act and may not be maintained.

The plaintiffs, Susan Brosnan, her husband, Peter Brosnan, and their son, Sean Brosnan, seek damages from Susan Brosnan's former employer, Sacred Heart University (Sacred Heart), the Bridgeport Roman Catholic Diocesan Corporation (Diocese) which
CT Page 9875
allegedly controls Sacred Heart, its excess coverage workers' compensation carrier, North River Insurance Co. (North River), and its claims administrator, Alexis, Inc.,[fn1] for allegedly failing to settle in good faith a workers' compensation claim filed by the plaintiff and in thereafter delaying the payment of benefits to her. The plaintiffs' amended complaint of March 3, 1997, alleges violations of CUTPA and CUIPA, negligent and intentional infliction of emotional distress, bad faith, loss of consortium, and bystander emotional distress.

The plaintiffs' amended complaint essentially alleges the following. On December 10, 1986, the plaintiff sustained a traumatic brain injury and related injuries arising out of and in the course of her employment with Sacred Heart which is under the direction, control and influence of the Diocese. Both Sacred Heart and the Diocese were self-insured for workers' compensation liability but had excess workers' compensation coverage pursuant to a policy of insurance issued by the defendant North River. The plaintiff's injury rendered her permanently disabled.

Initially, the plaintiff was told by Sacred Heart and the Diocese that they would file a workers' compensation claim on her behalf. Although the plaintiff received weekly payments of compensation for a short time, these payments "were arbitrarily

and capriciously stopped by the defendants." In December, 1987, the plaintiff learned that Sacred Heart had not filed a worker' compensation claim on her behalf and hired an attorney who filed a notice of claim on or about December 9, 1987. The defendants did not file a Form 43 or any notice that they would contest her claim.[fn2] Still, they refused to pay workers' compensation benefits to the plaintiff even though her medical and related expenses were mounting into tens of thousands of dollars. The defendants required the plaintiff to undergo an independent medical examination in New York City, which, in 1990, confirmed that the plaintiff's injuries were caused by her work-related injury.

The plaintiffs allege that the defendants "never conducted a reasonable, complete, prompt and proper investigation to develop the facts of the plaintiff's injury and claim" but "spent money for lawyers, doctors and private investigators to fight the claim. . . ." The defendants sought to exploit their economic advantage and exhibited bias against the plaintiff, making an inadequate offer to settle her claim for $570,000 which the plaintiff agreed to accept "out of frustration and desperation."
CT Page 9876
The defendants then reneged on that agreement. The defendants requested another hearing before the commissioner, another medical authorization and a deposition of one of the plaintiff's physicians.

On August 2, 1994, the plaintiff completed the presentation of her case before the workers' compensation commissioner. The defendants then announced that they had no evidence or witnesses to offer, and that they were accepting compensability. The defendants did not pay the plaintiff workers' compensation until August 18, 1994, when she received a check which was $5,264.80 less than what was due. The plaintiff was required to seek the intervention of the workers' compensation commissioner who ordered interest to be paid on the arrearages. The commissioner also ordered that the defendants provide nursing care for the plaintiff. The defendants allegedly provided such care by people who were not trained, experienced or adequate for the plaintiff's needs. The defendants did not pay for the first five weeks of care provided by a traumatic brain injury technician. The defendants did not reimburse the plaintiff for other expenses until 65 weeks after they had accepted the compensability of the plaintiff's claim at the August 2, 1994 hearing.

In 1995, after the plaintiff had undergone another hospitalization, the defendants required her to undergo another independent medical examination but refused to use the medical facility which was most familiar with her condition. The plaintiff also alleges that "[f]rom 1986 to the present time, the more the Defendants learned about the stress to the Plaintiff caused by the Defendants' bad faith handling of her claim, their delay and resistance to every benefit to which she is entitled and their refusal to pay benefits to her on her behalf, the more stress they continued to cause her by delay, refusal and bad faith. the defendants have continuously refused to prepare, sign and file with the workers' compensation commissioner an agreement as to compensation."

The plaintiff further alleges that "the Defendants breached

their implied covenant of good faith and fair dealing with the Plaintiffs by a continuing course of conduct of failing and refusing without proper cause to interview the Plaintiff and her husband, to properly and timely investigate Plaintiffs' claims and the cause of her injury by a prompt, fair and thorough investigation, to promptly and fairly evaluate her claims, to timely provide workers' compensation benefits including medical
CT Page 9877
care and treatment, to timely pay medical bills and expenses, or to fairly settle her claims, to follow State law in their `contest' of Plaintiff's claim, to promptly and fairly adjust her claims and to promptly pay benefits when due." The plaintiff claims that "the Defendants intentionally refused to comply with the workers' compensation laws and provide workers' compensation benefits" and that "all of the Defendants' . . . actions and conduct are and were designed and intended to harass and frustrate the plaintiffs in order to bring them to settle for less than the value of their cases."

The amended complaint contains eighty-four counts. In succeeding counts against each defendant, the plaintiff, her husband, Peter Brosnan, and her minor son, Sean Michael Brosnan, each allege that the defendants' actions constitute a violation of the Connecticut Unfair Insurance Practices Act; General Statutes §§ 38a-815, 38a-816; a violation of the Connecticut Unfair Trade Practices Act; General Statutes § 42-110 et seq; negligent infliction of emotional distress; wilful, wanton and reckless disregard of the plaintiffs' rights causing severe emotional and physical distress; and intentional infliction of emotional distress.

As damages, the plaintiffs allege that they suffered delay in the receipt of workers' compensation benefits, "stress anxiety", and frustration. The plaintiff and her husband allege that they suffered financial distress and damage to their credit. The plaintiff claims that her medical condition was aggravated and that the defendants' conduct caused or contributed to her having seizures. The plaintiff Peter Brosnan alleges that as a result of the defendants' conduct, he "has had his credit adversely affected, has experienced a significant adverse impact on his life and family life, has suffered mental and emotional distress, manifested by the return of depressive symptoms, general anhedonia, inhibited sexual desire, chronic fatigue, emotional "burn out", frustration and anxiety with related feelings of anger, victimization, injustice, helplessness and hopelessness.[fn3]

Sacred Heart and the Diocese filed a motion to dismiss based on the ground that the plaintiffs' claims were governed by the exclusivity provisions of the Workers' Compensation Act. North River filed a motion to dismiss asserting the exclusivity bar and the plaintiff's failure to exhaust administrative remedies.
CT Page 9878

The plaintiffs argued that their claim is not an action for compensation or benefits, but a "first party direct action in bad faith against the Defendants for their intentional and wilful tortious activities, and as such, it is not governed by the Workers' Compensation Act. The plaintiffs argue that the remedies and penalties in the Workers' Compensation Act do not give the

commissioner authority to remedy the injuries for which they are seeking damages.

    North River's motion was heard by the court *(Rush, J.)* and denied on the ground that "[t]he conduct upon which the claims are based do not relate to a personal injury arising out of and in the course of employment," but arose after the work related injury was sustained, and, therefore, are not barred by the exclusivity provisions. In ruling on North River's motion the court also held that "[t]here is no need to exhaust administrative remedies when the remedy is inadequate," citing *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, 519, 442 A.2d 920 (1982), and that neither General Statutes § 31-288 nor General Statutes § 31-300 provide an adequate remedy for the damages claimed.

    Sacred Heart's motion to dismiss was heard and denied by the court *(Levin, J.)* on the ground that the "claimed injury does not arise out of and in the course of employment." However, "taking cognizance of the question of subject matter jurisdiction on its own," the court ordered the parties to brief whether the plaintiffs' claim is barred by failing to exhaust administrative remedies, whether § 31-300 provides an exclusive remedy, and whether the ripeness doctrine is implicated." All parties submitted supplemental memoranda and were heard in oral argument. This court now holds that the Workers' Compensation Act, particularly General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303, provide the plaintiffs with exclusive remedies.

    General Statutes § 31-284 (a) provides in relevant part: "An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment. . . ." Connecticut appellate courts "consistently have interpreted the exclusivity provision of the act, General Statutes § 31-284 (a), as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." *Suarez v. Dickmont Plastics*
CT Page 9879
*Corp.*, 229 Conn. 99, 106, 639 A.2d 507 (1994). Although courts of other jurisdictions have discussed that such exclusivity provisions inform the issue as to whether a remedy for the wrongful termination or failure to pay worker's compensation benefits may be sought outside of the worker's compensation scheme; *Johnson v. Houston General Insurance Co.*, 259 Ark. 724, 536 S.W.2d 121 (1976); *Bright v. Nimmo*, 253 Ga. 378, 320 S.E.2d 365, 367 (1984); *Walters v. Industrial Indemnity Co. of Idaho*, 127 Idaho 933, 908 P.2d 1240, 1242 (1996); *Zurich Insurance Co. v. Mitchell*, 712 S.W.2d 340, 341 (Ky. 1986); *Kelly v. Raytheon, Inc.*, 29 Mass. App. 1000, 563 N.E.2d 1372, 1374 (1990), rev. den.; *Santiago v. Pennsylvania National Mutual Casualty Insurance Co.*, 613 A.2d 1235, 1240-1243 (Pa. Super. 1992); *Deeter v. Safeway Stores, Inc.*, 50 Wn. App. 67, 747 P.2d 1103, 1111 (1987) *(Grosse, J., concurring)*; it must be observed that the injuries for which the plaintiff seeks damages are not, strictly speaking, work related. Cf. *Fulco v. Norwich Roman Catholic Diocesan Corporation*, 27 Conn. App. 800, 609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993) (claim for negligent infliction of emotional distress incident to discharge from employment not barred by worker's compensation exclusivity).

The issue here is one of legislative intent; *Members of Bridgeport Housing Authority Police v. Bridgeport*, 564 F. Sup. 2, 5-6 (D.Conn. 1982); specifically, whether the legislature, in enacting General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303 within the general scheme of the workers' compensation act, intended to allow or preclude tort actions for the transgressions of which the plaintiffs complain.

"Our resolution of this issue is guided by well established principles of statutory construction. Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . We have previously recognized that our construction of the Workers' Compensation Act should make every part operative and harmonious with every other part insofar as is possible . . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result. . . ." (Citations omitted; internal quotation marks
CT Page 9880
omitted.) *Duni v. United Technologies Corp./Pratt & Whitney Aircraft Division*, 239 Conn. 19, 24, 682 A.2d 99 (1996).

First, we examine the words of the statutes.[fn4] "As is often the case in the context of workers' compensation legislation . . . the statutory language provides little guidance. . . ." *Duni v. United Technologies Corp./Pratt & Whitney Aircraft Division, supra*, 239 Conn. 25. However, two matters are significant. The first is that General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303, when read together with General Statutes §§ 31-297, 31-297a, provided the plaintiff with remedies for avoiding as well as obtaining relief for the wrongs allegedly committed by the defendants.

After a workers' compensation claim is filed, an informal hearing is held by the commissioner or chairman. "[A]ny recommendations made by the commissioner or chairman . . . shall be reduced to writing and, if the parties accept such recommendations, the recommendations shall be as binding upon the parties as an award . . . . The commissioner or chairman shall not postpone any such informal hearing if one party fails to attend unless both parties agree to the postponement." General Statutes § 31-297a. If the employer or the employee fail to reach an agreement, either may so notify the commissioner. Upon such notice "the commissioner shall schedule an early hearing upon the matter . . . provided the commissioner may, on finding an emergency to exist, give such notice as he finds reasonable under the circumstances. If no agreement has been reached within sixty days after the date notice of claim for compensation was received by the commissioner . . . a formal hearing shall be scheduled on the claim and held within thirty days after the end of the sixty-day period, except that if an earlier hearing date has previously been scheduled, the earlier date shall prevail." General Statutes § 31-297. No formal pleadings are required. General Statutes § 31-298. If either party unreasonably and without good cause delays the completion of the hearings, the delaying party may be assessed a civil penalty of $500.00 "for each such case of delay." General Statutes § 31-288 (b).

The commissioner must render findings and an award within 120 days of the completion of the formal hearing, although the parties may waive noncompliance. General Statutes § 31-300; *Stewart v. Tunxis Service Center*, 237 Conn. 71, 80, 676 A.2d 819 (1996). Once an employee receives an award, whether as the result of a voluntary agreement or a contested hearing, payment must begin within ten days or the employer shall pay a penalty "for each late payment, in the amount of twenty per cent of such payment, in addition to any
CT Page 9881
other interest or penalty imposed pursuant to the provisions of this chapter." General Statutes § 31-303. If no appeal is taken within ten days of an award, it "shall be final and may be enforced in the same manner as a judgment of the Superior Court. The court may issue execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the Superior Court. . . ." See *McIntyre v. Standard Oil Co.*, 126 Conn. 491, 12 A.2d 544 (1940). In contested cases, "where the claimant prevails and the commissioner finds that the employer or insurer has unreasonably contested liability, the commissioner may allow a claimant a reasonable attorney's fee." General Statutes § 31-300. Where, as here, it is claimed that payment of compensation has been unduly delayed by the fault of the employer or insurer, the commissioner may include in his award interest at the rate prescribed in General Statutes § 37-3a; General Statutes § 31-300; plus a civil penalty of not more than $500.00. An employer or insurer may not discontinue compensation payments for total or partial incapacity under an award without the commissioner's approval, and is subject to an award of interest and attorneys fees if it does so. General Statutes §§ 31-296, 31-300.

   The other matter which is significant for present purposes about the text of General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303, is that while the words "exclusive remedy" or words of similar import do not appear in the these statutes, the difficulty of harmonizing tort remedies with this statutory scheme is evident. Section 31-300, for example, requires findings of (1) fault or neglect, (2) delay, (3) undue delay, and (4) unreasonable contest of liability. These findings call for the exercise of discretion by the commissioner. *Balkus v. Terry Steam Turbine Co.*, 167 Conn. 170, 181, 355 A.2d 227 (1974); *Imbrogno v. Stamford Hospital*, 28 Conn. App. 113, 125, 612 A.2d 82, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992); *Hicks v. Department of Administrative Services*, 21 Conn. App. 464, 466, 573 A.2d 770 (1990), cert. denied, 216 Conn. 804, 577 A.2d 716 (1990); see *Ruiz-Dugue v. Greenwich Hospital*, 3267 CRB-7-96-2 (5-22-97) ("Whether to award attorney's fees and interest pursuant to . . . § 31-300 is a discretionary decision to be made by the trial commissioner.").[fn5] Similarly, § 31-288 (b) requires that the commissioner find (1) fault, (2) neglect, (3) undue delay in the adjustment or payment of compensation, (4) unreasonable delay of compensation proceedings, (5) delay of compensation proceedings without "good cause." It would be anomalous for the legislature to have vested such discretion in the commissioner while, at the same time, intending that a judge or jury could reach a contrary, inconsistent determination in an
CT Page 9882
action in tort. It is also noteworthy that elsewhere in § 31-300, the legislature expressly provided for enforcement of workers' compensation awards by the Superior Court.[fn6] Cf. *Plourde v. Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988) (The absence of repeatedly used words in the context of the same subject matter indicates a

difference in legislative intention.). "Had the lawmakers intended common law redress also be available for intentional conduct in failing to provide benefits, it could readily have done so. . . . The legislative omission persuades us that the lawmakers intended the penalty provisions of [the Workers' Compensation Act] to be the exclusive remedy." *Dunlevy v. Kemper Ins. Group,* 220 N.J. Super. 464, 532 A.2d 754, 757 (1987).[fn7]

The second criteria to which courts look in construing statutes is legislative history. Like the text, the legislative history of these statutes does not contain any explicit statement as to whether an action in tort was contemplated by the legislature in addition to the statutory remedy. The legislative history of recent amendments to these statutes,[fn7a] however, reflects the following. The legislature has been well aware for some time, by testimony — including testimony from actual victims — of misconduct, sometimes extreme, committed by insurers and self-insured employers in delaying and unreasonably contesting worker's compensation claims.[fn8] Also, business and insurance interests have frequently opposed proposals to augment the provisions for the award of interest and attorneys fees.[fn9] Recently, in 1993, along with an amendment to General Statutes § 31-300, there was a major revision of Connecticut's Workers' Compensation Act. The legislature heard substantial testimony that workers' compensation had become too expensive for Connecticut business, both institutionally insured and self-insured, and that this expense was diminishing the competitiveness of Connecticut business, eliminating jobs and causing businesses to relocate elsewhere.[fn10] Finally, there has been considerable debate over the years as to whether a workers' compensation commissioner should retain discretion in awarding interest, attorneys fees or and administrative fines, and whether the provisions of §§ 31-288 (b), 31-295 (c), 31-296, 31-300 and 31-303 were sufficiently severe.[fn11]

Third, as the text of the statutes, the case law and much of the foregoing legislative history confirms, there is little question as to the legislative policy which the monetary provisions of these statutes were designed to implement. Workers and their families had suffered mental anguish, the loss of their homes and
CT Page 9883
other property, due to institutional delay in the workers' compensation system and in some cases due to the negligence, indifference and alleged intentional acts by insurers and self-insured employers in acknowledging valid claims or in suspending payment for such claims, or due to the endemic delay in the worker's compensation system. The purpose of these statutory provisions, particularly General Statutes § 31-300, was to (1) compensate claimants for the delay in the payment or adjustment of their claims not caused by the fault or neglect of the insurer or employer; see *Pokorny v. Getta's Garage,* 22 Conn. App. 539, 543, 579 A.2d 98 (1990), reversed on other grounds, 219 Conn. 439, 594 A.2d 446 (1991); and (2) to compensate the claimant and to punish the employer or insurer[fn12] with an award of attorneys fees where the employer or insurer has unreasonably contested liability and with an award of interest and attorneys fees where through the fault or neglect of the employer or insurer payment or adjustment of compensation has been unduly delayed; see *Imbrogno v. Stamford Hospital,* supra, 28 Conn. App. 125; or where the employer or insurer has reduced or discontinued payments for total or partial incapacity without complying with the procedures for doing so.

Fourth, in ascertaining the legislature's intent the court examines the relationship of the statutes under examination to other existing legislation and common law principles governing the same subject matter. *Thompson & Peck, Inc. v. Division Drywall, Inc.*, 241 Conn. 370, 375, 696 A.2d 326 (1997). "Where . . . a statutory scheme exists for the recovery of a benefit that is also recoverable at common law, the common law right may be resorted to only where the statutory procedures are inadequate." *National CSS, Inc. v. Stamford*, 195 Conn. 587, 597, 489 A.2d 1034 (1985).[fn13] Here, however, there is no benefit that was recoverable at common law. At common law, there was no right to worker's compensation benefits, nor any claim for damages caused by the unreasonable contest of a claim for such benefits, for the delay in paying such benefits, for the failure to conduct a reasonable investigation to determine a claimant's entitlement for such benefits, or for wrongfully withholding such benefits. It is so that "[a]s between all persons in the mutual relationship of employer and employee . . . the right to obtain and the liability to pay compensation under the [Workers' Compensation] [A]ct is substituted for the common-law rights and liabilities otherwise existing between them to the exclusion of the latter." *Wright v. Coe & Anderson, Inc.*, 156 Conn. 145, 156-157, 239 A.2d 493 (1968). However, there is no *additional* action at common law for damages for failure to pay damages owing in tort or contract or for the other acts and omissions alleged by the
CT Page 9884
plaintiffs incident to an underlying action in tort or contract. Simply stated, here there are no "common law principles governing the same subject matter." *Thompson & Peck, Inc. v. Division Drywall, Inc.*, supra, 241 Conn. 375.[fn14]

This court's examination of the relationship of General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303 to existing legislation must be informed by our Supreme Court's "repeated[] observ[ation] that our act represents a complex and comprehensive statutory scheme balancing the rights and claims of the employer and the employee arising out of work-related personal injuries. Because of the comprehensive nature of the act, the responsibility for carving out exceptions from any one of its provisions belongs to the legislature and not to the courts." (Emphasis in original; internal quotation marks omitted.) *Libby v. Goodwin Pontiac-GMC Truck, Inc.*, 241 Conn. 170, 174-175, 695 A.2d 1036 (1997), quoting *Durniak v. August Winter & Sons, Inc.*, 222 Conn. 775, 781, 610 A.2d 1277 (1992); see also *Quire v. Stamford*, 231 Conn. 370, 375-76, 650 A.2d 535 (1994). "Such a comprehensive, well thought out legislative scheme should not be tinkered with by the courts." (Internal quotation marks omitted.) *Bouley v. Norwich*, 222 Conn. 744, 760, 610 A.2d 1245 (1992).[fn15] Given the circumscribed function of courts in a representative democracy, it is inappropriate "to undermine the tradeoffs that underlie workers' compensation"; *Durniak v. August Winter & Sons, Inc.*, supra, 222 Conn. 781; and which are reflected in the legislative history, by importing a common law cause of action as an additional remedy to those already provided in General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303. To do so "would `usurp the legislative function.' *Mingachos v. CBS, Inc.*, [196 Conn. 91, 106, 491 A.2d 368 (1985)]. We recognize that over the years the legislature has worked out a complex statutory scheme in promulgating workers' compensation statutes and that `[a]n integral part of this complex structure is the accepted proposition that an employee surrenders other claims for the

certainty of the exclusive workers' compensation remedy.' . . . As one court recognized, `[a] damage suit as an alternative or additional source of compensation, becomes permissible only by carving a judicial exception in an uncarved statute. . . . Neither moral aversion to the employer's act nor the shiny prospect of a large damage verdict justifies interference with what is essentially a policy choice of the Legislature.' *Azevedo v. Abel,* 264 Cal.App.2d 451, 459, 70 Cal.Rptr. 710 (1968); accord *Mingachos v. CBS, Inc., supra,* 106. The theme of legislative
CT Page 9885
preeminence in the workers' compensation area is echoed in many jurisdictions." *Panaro v. Electrolux, supra,* 208 Conn. 605.

For this reason, the applicable rule here is that where the liability and the remedy are created by statute, especially within a comprehensive statutory scheme, the remedy provided is exclusive of all others. *Bashford-Burmister Co. v. Aetna Indemnity Co.,* 93 Conn. 165, 178-79, 105 A. 470 (1919), and cases cited therein; see *Great American Federal Savings & Loan Assn. v. Novotny,* 442 U.S. 366, 372-78, 99 S.Ct. 2345, 60 L.Ed.2d 557 (1979); *United States v. Northrop Corp.,* 59 F.3d 953, 959 (9th Cir. 1995), cert. denied, 116 S.Ct. 2550, 135 L.Ed.2d 1069 (1995); *Register v. Coleman,* 130 Ariz. 9, 633 P.2d 410, 423 (1981); *Lubner v. City of Los Angeles,* 45 Cal.App.4th 525, 53 Cal.Rptr.2d 24, 28 (1996), review denied; *Schneider v. Wilmington Trust Co.,* 310 A.2d 897, 901 (Del. Ch. 1973); *Moore v. Coates,* 40 A.2d 68, 70-71 (D.C. Mun. App. 1944); *Hicks v. Williams,* 104 Ill. App.3d 172, 60 Ill. Dec. 379, 432 N.E.2d 1278, 1281 (1982); *Marhoefer Packing Co., Inc. v. Indiana Department of State Revenue,* 301 N.E.2d 209, 213 (Ind. App. 1973); *Hawkins v. Department of Welfare,* 303 Ky. 128, 197 S.W.2d 98, 99 (1946); *King Resources, Co. v. Environmental Improvement Commission,* 270 A.2d 863, 866 (Me. 1970); *Moats v. City of Hagerstown,* 324 Md. 519, 597 A.2d 972, 977 (1991); *Hurley v. Boston R. Holding Co.,* 315 Mass. 591, 54 N.E.2d 183, 195 (1944); *Monroe Beveradge Co., Inc. v. Stroh Brewery Co.,* 454 Mich. 41, 559 N.W.2d 297, 298 (1997); *Dudewicz v. Norris-Schmid, Inc.,* 443 Mich. 68, 503 N.W.2d 645, 649 (1993); *Dunn Construction Co. v. Craig,* 2 So.2d 166, 170 (Miss. 1941), suggestion of error overruled, 3 So.2d 834 (Miss. 1941); *Mennemeyer v. Hart,* 221 S.W.2d 960, 963 (Mo. 1949); *Abdullah v. Nebraska Department of Correctional Services,* 245 Neb. 545, 513 N.W.2d 877, 881 (1994); *Clemens Mobile Homes, Inc. v. Guerdon Industries, Inc.,* 199 Neb. 555, 260 N.W.2d 310, 313-314 (1977); *Gutierrez v. Sundancer Indian Jewelry, Inc.,* 117 N.M. 41, 868 P.2d 1266 (N.M.App. 1993), cert. denied, 117 N.M. 121, 869 P.2d 820 (1994); *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 490 N.Y.S.2d 735, 480 N.E.2d 349, 353 (1985); *Drinkhouse v. Parka Corp.,* 3 N.Y.2d 82, 164 N.Y.S.2d 1, 143 N.E.2d 767, 769 (1957); In re Berg's Estate, 72 N.D. 52, 4 N.W.2d 575, 580 (1942); *Lynch v. Dial Finance Co. of Ohio No. 1, Inc.,* 101 Ohio App.3d 742, 656 N.E.2d 714, 719, dismissed, appeal not allowed, 73 Ohio St.3d 1410, 651 N.E.2d 1308 (1995); *R. R. Tway, Inc. v. Oklahoma Tax Commission,* 910 P.2d 972, 978 (Okla. 1995); *Concerned Citizens of Beaver County v. Beaver County Board of Assessment Appeals,* 75 Pa. Commw. 443, 462 A.2d 347, 348 (1983); *Campbell v. Bi-Lo, Inc.,* 301 S.C. 448, 392 S.E.2d 477, 480-481 (App. 1990); *Daniel v. Conestee Mills,* 183 S.C. 337,
CT Page 9886
191 S.E. 76, 79 (1937); *Turner v. Harris,* 281 S.W.2d 661, 665 (Tenn. 1955); *Dolenz v. Texas State Board of Medical Examiners,* 899 S.W.2d 809, 811 (Tex. App. 1995); *Herron v. McClanahan,*

28 Wn. App. 552, 625 P.2d 707, 713 (1981); *Socha v. Socha,* 204 Wis.2d 474, 555 N.W.2d 152, 154 (Wis. App. 1996); *Hermann v. Town of Delavan,* 208 Wis.2d 216, 560 N.W.2d 280, 284-285 (Wis. App. 1996); *Van Buskirk v. Red Buttes Land & Live Stock Co.,* 24 Wyo. 183, 156 P. 1122, rehearing denied, 24 Wyo. 183, 160 P. 387 (1916); 1A C.J.S., Actions § 14b (1985) ("A statutory remedy to enforce a new right or liability, created by the same statute, is exclusive unless the statute clearly shows otherwise."); cf. *Garner v. Chambers,* 75 Ga. App. 756, 44 S.E.2d 507, 509 (1947).

This court acknowledges that some jurisdictions agree with the plaintiffs that an action in tort may be maintained against an employer or worker's compensation insurer for consequential damages arising out of the delay in paying or in terminating workers' compensation benefits to an employee. However, "a majority of jurisdictions that have considered the question have concluded that the tort action is barred." *Robertson v. Travelers Ins. Co.,* 95 Ill.2d 441, 69 Ill. Dec. 954, 448 N.E.2d 866 (1983). "Courts have held against the existence of such a cause of action for essentially two reasons. First, they have been persuaded by the policies underlying the exclusive remedy provisions of their state workers' compensation statutes. As Professor Larson explains in this connection:

> The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.

(Footnote omitted.) 2A A. Larson, [Workers' Compensation] § 68.34(c), at 13-145. Second, courts have been greatly influenced by the fact that workers' compensation statutes typically contain provisions that impose a penalty for wrongful delay or termination on benefits. Courts generally take the view that the presence of such a penalty provision in the workers' compensation statute evinces a legislative intent that the remedy for wrongful delay or termination of benefits remain within the workers' compensation system." *Wolf v. Scott Wetzel Services, Inc.,* 113 Wn.2d 665, 782 P.2d 203, 205-06 (1989) (en banc).
CT Page 9887

Moreover, to permit a private cause of action in tort for undue delay in accepting or paying a workers' compensation claim, for unreasonably contesting the claim, or for improperly terminating or modifying payment "would invite the indefinite prolonging of litigation and risk double recoveries and inconsistent findings of fact, a result which the legislature, in enacting a system of compensation in place of common law remedies wished to avoid." *Robertson v. Travelers Ins. Co.,* 95 Ill. Dec.2d 964, 69 Ill. Dec. 954, 448 N.E.2d 866, 871 (1983). While these observations were made by the Illinois Supreme Court, they are as true in Connecticut. First, for the judiciary to imply a cause of action in tort, notwithstanding the provisions of General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303, would indeed prolong litigation, as it has here. It is the public policy of this state "to prevent unnecessary litigation that places a burden on our state's already crowded court dockets." *Beaudoin v. Town Oil Co.,* 207 Conn. 575, 588, 542 A.2d 1124 (1988). "Overcrowded dockets have

become a major problem challenging the ability of the courts of this state and elsewhere to dispense justice." *Gionfrido v. Wharf Realty, Inc.,* 193 Conn. 28, 32, 474 A.2d 787 (1984); see *Jaworski v. Kiernan,* 241 Conn. 399, 409, 696 A.2d 332 (1997). Second, the risk of a double recovery is a very real one.

General Statutes § 31-300 provides for an award of attorneys fees where the employer or insurer has, through fault or neglect, delayed the payment or adjustment of compensation, unreasonably contested a claim, or discontinued or reduced payment of a claim without complying with statutory procedures.[fn16] So too, General Statutes § 31-296 provides for the payment of attorneys fees where the commissioner finds that an employer has discontinued or reduced payments required to be made pursuant to a voluntary agreement, without permission. At common law, attorney's fees are usually the principal component of punitive damages, which the plaintiffs here seek. Cf. *Bodner v. United Services Automobile Assn.,* 222 Conn. 480, 493, 610 A.2d 1212 (1992); *Raph v. Vogeler,* 45 Conn. App. 56, 65, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997); *DiNapoli v. Cooke,* 43 Conn. App. 419, 430, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996), cert. denied, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997); *Wedig v. Brinster,* 1 Conn. App. 123, 134, 469 A.2d 783 (1983), cert. denied, 192 Conn. 803, 471 A.2d 245 (1984). The attorney's fees awarded by the commissioner may be substantial. In a recent case, a workers' compensation commissioner awarded a claimant $25,000.00 in attorneys fees pursuant to General Statutes § 31-300. *Schiano v.*
CT Page 9888
*Bliss Exterminating and Second Injury Fund,* Workers' Compensation Commission, Fourth District, No. 400017608 (April 8, 1996).

Third, engrafting a civil action onto General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303 is an open invitation for inconsistent findings. As discussed supra, the determination as to whether to award interest and attorneys fees pursuant to § 31-300 is vested in the workers' compensation commissioner. *Balkus v. Terry Steam Turbine Co., supra,* 167 Conn. 181; *Imbrogno v. Stamford Hospital, supra,* 28 Conn. App. 125. What the Appellate Court said of General Statutes §§ 7-433b, 7-433c, is true with respect to General Statutes § 31-300, as well as General Statutes § 31-288: "The administration and interpretation of [§§ 31-288, 31-300] . . . is a primary function of the workers' compensation commissioner and the compensation review division. Those tribunals have developed a proficiency with [§§ 31-288 (b), 31-295 (c), 31-296, 31-300, 31-303], and have promulgated a body of law dealing with the interpretation of those statutory provisions.[fn17] This is underscored by the fact that an appeal from the compensation review division is taken not to the Superior Court but to the Appellate Court." *Hyatt v. Milford,* 26 Conn. App. 194, 199-200, 600 A.2d 5 (1991), appeal dismissed, 224 Conn. 441, 619 A.2d 450 (1993). The commissioner and the compensation review board have an intimate, working knowledge of and experience with the statutes, regulations, history and culture of worker's compensation. The commissioner, moreover, not only has knowledge of the facts of the case, but a unique insight into the actual trial of the case, before he exercises his discretion whether to award interest and attorneys fees pursuant to § 31-300. See *Sanchez v. Steben's Motors,* 3247 CRB-6-96-1 (12-24-96) ("Based on his impressions during the proceedings, [the commissioner] was entitled to draw a conclusion as to the reasonableness of the respondents' contest of

liability."). This knowledge cannot reasonably be imported into a jury trial. Indeed, it would be remarkable if there were not inconsistent determinations in light of this disparity in the universe of knowledge and experience available to the commissioner as opposed to a jury. Moreover, while the commissioner's determination is largely discretionary, with certain exceptions not applicable here "the function of the jury is to find the facts and that in so doing, the jury must apply to the evidence before them the rules of law provided by the court in its charge." *Gaulton v. Reno Paint & Wallpaper Co.*, 177 Conn. 121, 127, 412 A.2d 311 (1979); cf. *Berry v. Loiseau*, 223 Conn. 786, 826, 614 A.2d 414 (1992) (declining to abandon Connecticut's rule regarding the measurement of punitive damages in favor of the "common law" rule
CT Page 9889
because "the common law rule allowing broad jury discretion is at odds with the generally accepted rule of compensation in civil cases."). Especially where, as here, it is claimed that the plaintiff's injuries are substantial, it is all too easy for a jury to conclude that a respondent or insurer who did not prevail before the worker's compensation commissioner or conceded compensability only after discovery and a full investigation, unreasonably contested the claim.

The plaintiffs rely heavily on *Carpentino v. Transport Insurance Co.*, 609 F. Sup. 556 (D.Conn. 1985), in which an employee, invoking the diversity jurisdiction of the federal court, brought a civil action against his employer's insurer which allegedly had unilaterally stopped making workers' compensation payments as required under a voluntary agreement, in violation of General Statutes (Rev. 1983) § 31-296. Although a diversity case such as *Carpentino,* involving the construction of a state legislative scheme, "is not binding [on this court], it may be persuasive authority." *General Accident Insurance Co. v. Wheeler,* 221 Conn. 206, 212, 603 A.2d 385 (1992); *Quimby v. Kimberly Clark Corporation,* 28 Conn. App. 660, 670 n. 6, 613 A.2d 838 (1992). In *Carpentino,* the plaintiff sought consequential damages for (1) the insurer's bad faith breach of contractual obligations grounded on its unilateral discontinuance of benefits, and (2) a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA). *Id.*, 558. The defendant moved to dismiss the action on the basis that the plaintiff's sole remedy was under the workers' compensation act.

The *Carpentino* court stated that "the precise issue presented is whether the exclusivity provisions of the Act bar an employee's action at law for `consequential damages' caused by the intentional `bad faith' conduct of an employer's insurer in terminating voluntary compensation payments under the Act." *Id.,* 559. After observing that the jurisdictions were split on the issue and that the question as to what the Connecticut Supreme Court would hold was "not free from doubt"; *id.,* 561; the court held that an action for bad faith could be maintained, for five reasons.[fn18]

First, the court, in essence, stated that the plaintiff's claimed injuries did not arise out of and in the course of his employment. *Id.,* 562. While this is true, it is irrelevant to whether the legislature intended that General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303 provide the plaintiff with an exclusive remedy.
CT Page 9890

The *Carpentino* court continued,

> Second, the Act should not be an impervious barrier, insulating a wrongdoer from the payment of just and fair damages for intentional tortious acts only very tenuously related to workplace injuries. The public interest requires that wrongs be redressed, that unlawful conduct be discouraged and punished, and that an innocent victim be compensated for his injuries.
>
> Third, it is reasonable to infer that, because the penalty provision in the Act provides only for attorney's fees and six percent interest, the legislature contemplated that additional remedies could be sought in an action at law for tort damages to compensate fully claimants for the insurer's actions unrelated to workplace accidents. The penalties prescribed, which in the overwhelming majority of cases will be triggered by an insurer's mere inadvertence, negligence, or mismanagement of the employee's personal injury [sic] claim, seem hardly sufficient to remedy an insurer's intentional tortious conduct.

*Id.*, 562. No citation of case law, analysis of Connecticut's workers' compensation scheme or examination of its legislative history accompanied these statements.

Connecticut's workers' compensation act is not "an impervious barrier, insulating a wrongdoer" from payments "for intentional tortious acts" in violating voluntary agreements or other wrongs in subverting the requirements of the act. But the measure of payments is manifestly a proper question for the legislature. The legislative history reflects that tradeoffs and legislative compromises have been made between competing interest groups. The legislative will, a product of those tradeoffs and compromises, expressed in the workers' compensation act is conclusive on the court. *Vigliante v. New Haven Clock Co.,* 143 Conn. 571, 581, 124 A.2d 526 (1956). Similarly, as for what the public interest requires, "[i]t is for the legislature to determine what is in the public interest. . . ." *West v. Egan,* 18 Conn. Sup. 447, 450 (1953); see also *Lieberman v. Board of Labor Relations,* 216 Conn. 253, 266, 579 A.2d 505 (1990); *Lehrer v. Davis,* 214 Conn. 232, 239, 571 A.2d 691 (1990); *In re Final Grand Jury Report, Torrington Police Dept.,* 197 Conn. 698, 706, 501 A.2d 377 (1985); *Connolly v.*
CT Page 9891
*Connolly,* 191 Conn. 468, 481, 464 A.2d 837 (1983); *Karp v. Zoning Board,* 156 Conn. 287, 297, 240 A.2d 845 (1968); *Winslow v. Zoning Board,* 143 Conn. 381, 391, 122 A.2d 789 (1956); *Bona v. Freedom of Information Commission,* 44 Conn. App. 622, 630, 691 A.2d 1 (1997).

Contrary to the suggestion in *Carpentino,* there is absolutely nothing in the legislative history of General Statutes §§ 31-295 (c), 31-296, 31-300, 31-303 on which "to infer that . . . the legislature contemplated that additional remedies could be sought in an action at law for tort damages" for failure to pay or delay in paying workers' compensation benefits as ordered or as agreed by the parties. It is hardly reasonable that the legislature would haggle as it has during so many years over the extent of the remedies provided in General Statutes §§ 31-288 (b), 31-295 (c),

31-296, 31-300, 31-303 if a claimant could simply walk a few blocks to the courthouse and file a civil action against the employer or insurer for unlimited damages. Moreover, the *Carpentino* court's statement that "the penalties prescribed in [§ 31-300] . . . seem hardly sufficient to remedy an insurer's intentional tortious conduct" misses the point. That point is that in a legislative scheme as comprehensive as the workers' compensation act, the amount of the remedies and penalties is a legislative, not a judicial, decision.

Next the *Carpentino* court stated: "it is questionable whether an `exclusivity' provision in the Act can be constitutionally sustained if it results in an aggrieved person being deprived of his due process rights to full redress for another's wilful misconduct." *Id.*, 562. Again, no citation of authority or analysis followed this sweeping statement. Here, the plaintiffs makes no constitutional claim. Therefore, this court does not address it, except to note that any such due process claim was disposed of in *Coolick v. Windham,* 7 Conn. App. 142, 508 A.2d 46 (1986).[fn19]

"Finally," the *Carpentino* court stated, "the Court is not persuaded that the effect of its holding will open the floodgates to lawsuits against insurers by every injured employee who may be dissatisfied with the processing or the amount of his compensation benefits." *Id.*, 562. Again, no authority was cited. Such comments by the judiciary, like second marriages, tend to be expressions of hope over experience. However, after the Alaska Supreme Court held in 1974 in *Stafford v. Westchester Fire Ins. Co.,* 526 P.2d 37 (Alaska 1974), that a cause of action in tort could be maintained against a workers' compensation carrier for intentional infliction of emotional distress, Professor Larson wrote: "The *Stafford* case
CT Page 9892
set off a wave of attempted tort actions based on intentional delay in or termination of payments or of medical treatments." 6 Larson's Workers' Compensation Law § 68.34(c), p. 13-199.

Of course, since it is a statutory scheme we are construing, it is relatively insignificant as to whether the action which the plaintiffs advance would, if sustained, "open the floodgates". The General Assembly is entirely at liberty to enact legislation which floods the courts. Here, however, this court finds no such intent and, for that reason, does not find *Carpentino* persuasive authority.[fn20]

The plaintiffs claim that the defendants' acts and omissions breached their duty of good faith and fair dealing. "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other party to receive the benefits of the agreement." *Habetz v. Condon,* 224 Conn. 231, 238, 618 A.2d 501 (1992). "The concept of good faith and fair dealing is `[e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy.'" *Verrastro v. Middlesex Ins. Co.,* 207 Conn. 179, 190, 540 A.2d 693 (1988), quoting *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 567, 479 A.2d 781 (1984).

There are two contracts implicated in the plaintiffs' complaint. The first is the plaintiff's contract of employment with her employer, Sacred Heart. The relation between employer and employee is contractual, and the Workers' Compensation Act is an implied part of the contract between them. *Fidelity & Casualty Ins. Co. of New York v. Sears, Roebuck & Co.*, 124 Conn. 227, 233, 199 A. 93, 117 A.L.R. 565 (1938); *Powers v. Hotel Bond Co.*, 89 Conn. 143, 145-146, 93 A. 245 (1915). "'Unless the agreement indicates otherwise, [an applicable] statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein.' *Hatcho Corporation v. Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985)." *Harlach v. Metropolitan Property & Liability Ins. Co.*, 221 Conn. 185, 192, 602 A.2d 1007 (1992). of course, for the plaintiff's husband and son to enforce this contract, they must be third party beneficiaries to it. The test to determine whether a contract creates a third party beneficiary relationship is
CT Page 9893
whether the parties to the contract intended to create a direct obligation from one party to the contract to the third party. *Gateway v. DiNoia*, 232 Conn. 223, 231, 654 A.2d 342 (1994), and cases cited therein. "The intent to confer a benefit is irrelevant to the determination of whether [a person] was a third party beneficiary." *Id.*

The second contract implicated in the plaintiffs' complaint is the policy of insurance alleged to exist between the defendant The North River Insurance Company on the one hand and Sacred Heart and the Diocese on the other. Significantly, General Statutes § 31-340 provides: "Whenever any employer of labor as defined in this chapter insures his liability under this chapter with any company authorized to transact a compensation insurance business in this state, *the contract of insurance between such employer of labor and such insurer shall be a contract for the benefit of any employee who sustains an injury arising out of and in the course of his employment* by such insured by reason of the business operations described in the policy, while conducted at any working place therein described or elsewhere in connection therewith, *or, in the event of such injury resulting in death, for the benefit of the dependents of such employee.* Every such policy shall contain an agreement by the insurer to the effect that the insurer shall be directly and primarily liable to the employee and, in the event of his death, to his dependents or to any person entitled to burial expenses under section 31-306, to pay to him or to them the compensation, if any, for which the employer is liable; but payment in whole or in part of such compensation by either the employer or the insurer shall to the extent thereof be a bar to the recovery against the other of the amount so paid." (Emphasis added.) Therefore, by statutory fiat, "[t]o every policy [of workers' compensation insurance] each employee of the insured [employer] is, in a very real sense, a party. . . ." *Piscitello v. Boscarello*, 113 Conn. 128, 130, 154 A. 168 (1931). However, "we note that the examination of good faith and fair dealing in the settling of an insurance claim requires a case-by-case analysis." *Verrastro v. Middlesex Insurance Co., supra,* 207 Conn. 190.

Here, it is unnecessary to determine the nature or extent of the defendants' duty of good faith and fair dealing.[fn21] For the reasons, discussed supra, that duty is actionable only to the extent provided in and in the context of the Workers' Compensation