Act. See, e.g., General Statutes §§ 31-288 (b), 31-295 (c), 31-296, 31-300, 31-303; cf. *Coolick v. Windham, supra,* 7 Conn. App. 147-148. "Had the lawmakers intended common law redress also be
CT Page 9894
available for intentional conduct in failing to provide benefits, it could have readily done so. . . . The legislative omission persuades us that the lawmakers intended the penalty provisions of [the Workers' Compensation Act] to be the exclusive remedy." *Dunlevy v. Kemper Insurance Group,* 220 N.J. Super. 464, 532 A.2d 754, 757 (1986). The remedy provided within the Workers' Compensation Act "constitute[s] an exclusive remedy, and that remedy precludes an action at law, even for an intentional tort arising out of the non-payment of benefits." *Cain v. National Union Life Insurance Co.,* 290 Ark. 240, 718 S.W.2d 444 (1986); see *Cianci v. Nationwide Insurance Group,* 659 A.2d 662, 669 (R.I. 1995); *Santiago v. Pennsylvania National Mutual Casualty Insurance Co., supra,* 613 A.2d 1235); *Wood v. Union Electric Co.,* 786 S.W.2d 613 (Mo. App. 1990); *Kuney v. PMA Insurance Co.,* 525 Pa. 171, 578 A.2d 1285 (Pa. 1990); *Kelly v. Raytheon, Inc., supra,* 29 Mass. App. 1000, 563 N.E.2d 1372; *Deeter v. Safeway Stores, Inc., supra,* 747 P.2d 1111-1112 (Grosse, J., concurring); *Bright v. Nimmo, supra,* 320 S.E.2d 368; *Hormann v. New Hampshire Insurance Co.,* 236 Kan. 190, 689 P.2d 837 (1984); *Jadofsky v. Iowa Kemper Insurance Co.,* 120 Wis.2d 494, 355 N.W.2d 550 (1984).

For the same reasons, the plaintiff may not maintain an action against the defendants under the Connecticut Unfair Insurance Practices Act (CUIPA); General Statutes § 38a-815 et seq.[fn22]; or the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. It is true that in *Mead v. Burns,* 199 Conn. 651, 665-66, 509 A.2d 11 (1986), the Supreme Court held that a private cause of action existed under CUTPA to enforce alleged CUIPA violations. See *Lees v. Middlesex Insurance Co.,* 219 Conn. 644, 654, 594 A.2d 952 (1991). CUTPA and CUIPA are statutes of general application. "Statutes general in their terms are, in certain instances, construed to admit implied exceptions. *New Haven Savings Bank v. Warner,* 128 Conn. 662, 669, 25 A.2d 50 (1942); *Kelley v. Killourey,* 81 Conn. 320, 321, 70 A. 1031 (1908)." *Kron v. Thelen,* 178 Conn. 189, 197, 423 A.2d 857 (1979); see also *Conners v. New Haven,* 101 Conn. 191, 199, 125 A. 375 (1924). Just as "the statutory or contractual basis of uninsured motorist coverage [did] not exempt a claim for such benefits from the purview of the exclusivity provision of the Workers' Compensation Act" prior to the enactment of Public Act No. 93-297 § 1(f); *CNA Insurance Co. v. Coleman,* 222 Conn. 769, 773, 610 A.2d 1257 (1992); so too the legislative intent behind the Workers' Compensation Act, discussed supra, militates that CUIPA and CUTPA "not override the exclusivity of the Workers' Compensation Act." *Bouley v. Norwich, supra,* 222 Conn. 757; see *Deeter v. Safeway Stores, Inc.,* 50 Wn. App. 67,
CT Page 9895
747 P.2d 1103, 1110 (1987).

Since the plaintiff may not maintain an action at law against the defendants, neither may the plaintiff Peter Brosnan, her husband, or the plaintiff Sean Brosnan, her son, maintain such an action. In general, an employer and its insurer do not owe an independent duty under the Workers' Compensation Act to dependents of an injured employee since "a dependent has no compensation rights unless and until the employee dies. . . ." *Duni v. United Technologies Corp./Pratt & Whitney Aircraft Division, supra,*

239 Conn. 19, 25 (holding that an employee's stipulated settlement of his workers' compensation claim bars claim for survivors' benefits by employee's dependent spouse); see also *Biederzycki v. Farrel Foundry & Machine Co.*, 103 Conn. 701, 704-05, 131 A. 739 (1926) (findings and award in employee's claim for workers' compensation are binding in surviving spouse's claim for death benefits); *Mitchell v. Scott Wetzel Services, Inc.*, 227 Cal.App.3d 1474, 278 Cal.Rptr. 474, 478 (1991) (workers' compensation exclusivity extends to actions for loss of consortium).

The court recognizes that "[t]he purpose of the Workmen's Compensation Act is to provide a prompt, efficient, simple and inexpensive procedure for obtaining benefits related to employment"; *Middletown v. Local Union #1073*, 1 Conn. App. 58, 65, 467 A.2d 1258, cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1983); and that this purpose has not always been accomplished in the recent past. See *Balkus v. Terry Steam Turbine Co.*, supra, 167 Conn. 181; *Pokorny v. Getta's Garage*, supra, 22 Conn. App. 542-43. As in *Pokorny*, "[t]his case is now over ten years old." *Pokorny v. Getta's Garage*, supra, 22 Conn. App. 543.

"In 1990, the Legislative Program Review and Investigations Committee undertook a comprehensive study of the workers' compensation system and, in January, 1991, issued its report entitled, `Workers' Compensation in Connecticut' (Report). The committee `found that the system's current administrative structure is not responsive to the concerns of either employers, who pay for benefits, or employees, who receive benefits. Management is weak and accountability is lacking. District offices vary significantly in terms of outcomes and efficiency, and their operating policies and procedures are not uniform. Administrative resources for central and district office operations are inadequate, particularly given the dramatic growth in workload, and backlogs and delays in case processing are widespread.' Report, p. i." (Footnotes omitted.) *Dixon v. United Illuminating Co.*, 232 Conn. 758, 772-73, CT Page 9896
657 A.2d 601 (1995). "In response, the 1991 General Assembly enacted No. 91-339 of the 1991 Public Acts. That act, much of which is now codified at § 31-280, made sweeping changes in the powers of the chairman." "The broad language of these provisions, read against the problematic administrative history of the office of the chairman and read in the context of the other twenty-three administrative powers currently granted to the chairman under § 31-280 (b), indicates clearly the extensive administrative authority granted to the chairman to manage the workers' compensation system so that cases are processed in a timely and efficient manner." *Id.*, 774. However, courts cannot ignore the rules of statutory construction or disregard the legislature's intent behind such a complex and comprehensive statutory scheme as the Workers' Compensation Act either in isolated cases or periodic breakdowns of efficiency in the administrative structure of the Workers' Compensation Commission. Courts have no other duty to perform than to execute the legislative will. *Grace Hospital Society v. New Haven*, 119 Conn. 146, 154, 174 A. 411 (1934). "The policy considerations regarding the fairness of the [penalty] provisions of the Worker's Compensation Act are the responsibility of the legislature and not within the domain of the judiciary." *Jadofsky v. Iowa Kemper Ins. Co.*, supra, 355 N.W.2d 552.[fn23]

This brings us to the procedural posture of the case. The

matter came before the court on the defendants' motions to dismiss. Although those motions claimed that the plaintiffs' complaint was barred by the exclusivity provisions of the workers' compensation act, the provision on which the defendants relied was General Statutes § 31-284 rather than General Statutes §§ 31-295 (c), 31-296, 31-300. The issue was reframed by the court itself, as discussed *supra,* and supplemental briefs were filed by the parties.

In *Grant v. Bassman,* 221 Conn. 465, 604 A.2d 814 (1992), the Supreme Court held "that a claim that an injured plaintiff has made an election of workers' compensation is properly raised by a special defense" and not by a motion to dismiss. This is because General Statutes § 31-284 "is not at all a denial of jurisdiction in the Superior Court, as such, but is basically a destruction of an otherwise existent common-law right of action. . . . In other words, there is not a lack of jurisdiction in the court but a want of a cause of action in the plaintiff." *Id.,* 472, quoting *Fusaro v. Chase Brass & Copper Co.,* 21 Conn. Sup. 240, 154 A.2d 138 (1956). From these remarks, several superior court decisions have held that a claim that a cause of action is barred by the exclusivity provision of General Statutes § 31-284 cannot be determined by a
CT Page 9897
motion to strike but must be plead as a special defense. Typical of these cases is *Redding v. Liberty Bank,* Superior Court, judicial district of New London, No. 531691 (May 22, 1995), which stating: "A motion to strike tests the legal sufficiency of a pleading; but, here, the defendant has moved beyond a challenge to the legal sufficiency of count five on the ground that such allegations are simply not maintainable as a cause of action at all, a challenge that is properly raised by way of a special defense."

While such a challenge no doubt "is properly raised by a special defense," it is much too late in the day, and rather Orwellian, to contend that a claim that a plaintiff has not alleged a cause of action cannot be challenged by a motion to strike, the successor to the demurrer. See *Kowal v. Hofher,* 181 Conn. 355, 358, 436 A.2d 1 (1980); *Joseph Rugo, Inc. v. Henson,* 148 Conn. 430, 433, 171 A.2d 409 (1961); *Beach v. Trumbull,* 133 Conn. 282, 284, 50 A.2d 765 (1946); *Lucier v. Hittleman,* 125 Conn. 635, 636, 7 A.2d 647 (1939); *Shiels v. Audette,* 119 Conn. 75, 76, 174 A. 323 (1934); *Gonchar v. Kelson,* 114 Conn. 262, 264, 158 A. 545 (1932); *Flynn v. New York, N. H. & H.R. CO.,* 111 Conn. 196, 198, 149 A. 682 (1930), aff'd, 283 U.S. 53, 51 S.Ct. 357, 75 L.Ed. 837 (1931); *Prindle v. Sharon Water Co.,* 105 Conn. 151, 154, 134 A. 807 (1926); *Star Contracting Corporation v. Manway Construction,* 32 Conn. Sup. 64, 68, 337 A.2d 669 (1973); *Kuschy v. Norris,* 25 Conn. Sup. 383, 384, 206 A.2d 275 (1964). "The motion to strike, Practice Book, 1978, § 151, replaced the demurrer in our practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading. Practice Book, 1978, § 152. . . . The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them . . . and if facts provable under the allegations would support a defense or a cause of action, the demurrer [motion to strike] must fail." (Citations and internal quotation marks omitted.) *Alarm Applications v. Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980). Conversely, if facts provable under the allegations of the complaint would not support a cause of action, the motion to strike, as the foregoing string citation of cases establish, must be sustained. That the absence of a cause of action

results from the application of a statute does not preclude the granting of a motion to strike, if the issue can be determined without resort to facts beyond those alleged in the complaint. See, e.g., *Wenc v. New London*, 235 Conn. 408, 667 A.2d 61 (1995) (motion to strike personal injury complaint granted because highway defect statute, § 13a-149, was exclusive remedy); *Winslow v. Lewis-Shepard, Inc.*, 212 Conn. 462, 562 A.2d 517 (1984) (motion to strike
CT Page 9898
personal injury complaint because products liability statute provided exclusive remedy); *Forbes v. Ballaro*, 31 Conn. App. 235, 239-40, 624 A.2d 389 (1993) (when motion to strike may be used to raise statute of limitations). Not only has Judge (now Justice) Berdon ruled that a complaint is vulnerable to a motion to strike on the grounds that the exclusive remedy is the workers' compensation act; *Hatcher v. Bullard Co.*, 39 Conn. Sup. 250, 477 A.2d 1035 (1984); but the very issue raised in this action, whether a complaint asserted a legally sufficient claim for wrongful refusal to pay worker's compensation benefits, was determined on a motion to strike in *Mora v. Aetna Life & Casualty Co.*, 13 Conn. App. 208, 535 A.2d 390 (1988).

A claim that a cause of action is barred by General Statutes § 31-284 (a) will often depend on disputed facts beyond those alleged in the complaint. That was the true basis of the statement in *Grant v. Bassman, supra,* 221 Conn. 465 that the issue was more properly raised by a special defense. "The claim that a plaintiff has elected an exclusive remedy relies on facts outside those alleged in the complaint that operate to negate what may once have been a valid cause of action. 1 E. Stephenson, Connecticut Civil Procedure (2d Ed.) § 127, p. 519. It is therefore both rational and fair to place the burden of pleading and proving an election of remedies on the party asserting the claim, usually the defendant. `It is sufficient to require the plaintiff to allege facts showing that at one time, at least, he had a cause of action. It would be an undue burden to require him to negate the occurrence of any and all subsequent events that could operate to destroy his cause of action.' *Id.*" *Id.*, 473. These concerns are not present here. Moreover, *Grant* did not hold that a motion to strike was never a proper vehicle by which to challenge a complaint alleging, as here, wrongful refusal to pay or termination of worker's compensation payments.

The motions before the court are motions to dismiss. However, the Appellate Court has held that a trial court may treat a motion to dismiss as a motion to strike. *Commissioner of Environmental Protection v. Lake Phipps Land Owners Corporation*, 3 Conn. App. 100, 102, 102 n. 2, 485 A.2d 580 (1985). This comports with the injunction of Practice Book § 6 that the design of the rules is "to facilitate business and advance justice." Rules of civil procedure are to be construed so as to secure the orderly, "just, *speedy, and inexpensive* determination of every action." (Emphasis added.) *Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (quoting Fed.R.Civ.Proc. 1). Treating the motions to
CT Page 9899
dismiss as motions to strike, the motions are granted.

By The Court

Bruce L. Levin
Judge of the Superior Court

[fn1] Alexis, Inc., is not a party to any of the motions under discussion.

[fn2] A Form 43 is a form prescribed by the workers' compensation commissioners pursuant to Regulations of Connecticut State Agencies § 31-296-2 which is filed by an employer or its insurer where either wish to make workers' compensation payments and also wish to contest the compensability of a claim. Section 31-296-2 of the Regulations of Connecticut State Agencies provides: "In any case in which the employer or the insurer doubts the fact of accident or the causal relationship between the accident and the disability, but wishes to make payment without prejudice and without admitting liability, he shall notify both the claimant and the commissioner by letter that payment will be made without prejudice. Such letter shall contain a statement of the average weekly wage, the compensation disability rate, the number of dependent children or stepchildren and the total weekly benefit to be paid. A formal notice of the employer's intention to contest liability (Form 43) shall accompany such letter to protect the respondent's rights. Payments without prejudice shall be made for not more than six weeks. If, at the end of such period, the employer or insurer has completed his investigation and determines the accident is compensable, a voluntary agreement shall be offered. Otherwise, the employer shall promptly request an informal hearing." See *Infante v. Mansfield Construction*, 3067 CRB-4-95-5 (12-18-96).

[fn3] In paragraph 27 of each count of their amended complaint the plaintiffs allege: "Defendants *required* Ms. Brosnan to undergo an exclusive IME in New York City at Rusk Institute of Head Trauma." (Emphasis added.) Similarly, in paragraph 56 of each count the plaintiffs allege: "In 1995 the Defendants *required* Susan Brosnan to undergo another IME and refused to utilize the Rusk Institute which had extensive background information and records on her condition." (Emphasis added.)

"[W]hen a motion to dismiss does not seek to introduce facts outside of the record it is equivalent to our former motion to CT Page 9900
erase and admits all well pleaded facts, the complaint being construed most favorably to the plaintiff. *Brewster v. Brewster*, 152 Conn. 228, 233, 206 A.2d 106 (1964)." *American Laundry Machinery, Inc. v. State*, 190 Conn. 212, 217, 459 A.2d 1031 (1983). It does not, however, admit legal conclusions. *Id.*

In the context of this case, whether the defendants "required" the plaintiff to do anything is not a question of fact but a question of law. The Connecticut Workers' Compensation Act is a comprehensive statutory scheme. *Durniak v. August Winter & Sons, Inc.*, 222 Conn. 775, 781, 610 A.2d 1277 (1992). There is no provision in that act, or in the regulations promulgated thereunder, whereby an employer or insurer may unilaterally "required" a claimant to submit to a so-called independent medical examination or "IME." Compare General Statutes §§ 31-278, 31-298a.

[fn4] General Statutes § 31-295 (c) states: "If the employee is entitled to receive compensation for permanent disability to an injured member in accordance with the provisions of subsection (b) of section 31-308, the compensation shall be paid to him

beginning not later than thirty days following the date of the maximum improvement of the member or members and, if the compensation payments are not so paid, the employer shall, in addition to the compensation rate, pay interest at the rate of ten per cent per annum on such sum or sums from the date of maximum improvement. The employer shall ascertain at least monthly whether employees are entitled to compensation because of a loss of wages as a result of the injury and, if there is a loss of wages, shall pay the compensation. The chairman of the Workers' Compensation Commission shall adopt regulations, in accordance with the provisions of chapter 54, for the purpose of assuring prompt payment by the employer or his insurance carrier."

General Statutes § 31-296 provides in pertinent part: "If an employer and an injured employee, or in case of fatal injury his legal representative or dependent . . . reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer . . . and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. . . . [T]hereafter it shall be as binding upon both parties as an award by the commissioner. . . . Before discontinuing or reducing payment on account of total or partial incapacity under any such agreement, the employer, if it is claimed by or on behalf of the
CT Page 9901
injured person that his incapacity still continues, shall notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of such payments, with the date of such proposed discontinuance or reduction and the reason therefor, and, such discontinuance or reduction shall not become effective unless specifically approved in writing by the commissioner. The employee may request a hearing on any such proposed discontinuance or reduction within ten days of receipt of such notice. . . . In any case where the commissioner finds that an employer has discontinued or reduced any payments made in accordance with this section without the approval of the commissioner, such employer shall be required to pay to the employee the total amount of all payments so discontinued or the total amount by which such payments were reduced, as the case may be, and shall be required to pay interest to the employee, at a rate of one and one-quarter per cent per month or portion thereof, on any payments so discontinued or on the total amount by which such payments were reduced, as the case may be, plus reasonable attorney's fees incurred by the employee in relation to such discontinuance or reduction."

General Statutes § 31-300 provides in pertinent part: "In cases where, through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed, or where through such fault or neglect, payments have been unduly delayed, the commissioner may include in his award interest at the rate prescribed in section 37-3a and a reasonable attorney's fee in the case of undue delay in adjustments of compensation and may include in his award in the case of undue delay in payments of compensation, interest at twelve per cent per annum and a reasonable attorney's fee. Payments not commenced within thirty-five days after the filing of a written notice of claim shall be presumed to be unduly delayed unless a notice to contest the claim is filed in accordance with section 31-297. In cases

where there has been delay in either adjustment or payment, which delay has not been due to the fault or neglect of the employer or insurer, whether such delay was caused by appeals or otherwise, the commissioner may allow interest at such rate, not to exceed the rate prescribed in section 37-3a, as may be fair and reasonable, taking into account whatever advantage the employer or insurer, as the case may be, may have had from the use of the money, the burden of showing that the rate in such case should be less than the rate prescribed in section 37-3a to be upon the employer or insurer. In cases where the claimant prevails and the commissioner finds that the employer or insurer has unreasonably
CT Page 9902
contested liability, the commissioner may allow to the claimant a reasonable attorney's fee. No employer or insurer shall discontinue or reduce payment on account of total or partial incapacity under any such award, if it is claimed by or on behalf of the injured person that his incapacity still continues, unless such employer or insurer notifies the commissioner and the employee of such proposed discontinuance or reduction in the manner prescribed in section 31-296 and the commissioner specifically approves such discontinuance or reduction in writing. The commissioner shall render his decision within fourteen days of receipt of such notice . . . . In any case where the commissioner finds that the employer or insurer has discontinued or reduced any such payment without having given such notice and without the commissioner having approved such discontinuance or reduction in writing, the commissioner shall allow the claimant a reasonable attorney's fee together with interest at the rate prescribed in section 37-3a on the discontinued or reduced payments."

General Statutes § 31-303 provides in relevant part: "Payments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of agreement. Payments due under an award shall commence on or before the tenth day from the date of such award. . . . Any employer who fails to pay within the prescribed time limitations of this section shall pay a penalty for each late payment, in the amount of twenty per cent of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter."

These are not the only statutes which provide for a sanction against an employer or insurer. General Statutes § 31-288 (a) provides that if an employer wilfully fails to conform to any provision of chapter 568, it shall be fined not more than $250.00 for each offense. General Statutes § 31-288 (b) provides in relevant part: "Whenever (1) through the fault or neglect of an employer or insurer, the adjustment or payment of compensation due under this chapter is unduly delayed, or (2) either party to a claim under this chapter has unreasonably, and without good cause, delayed the completion of the hearings on such claim, the delaying party or parties may be assessed a civil penalty of not more than five hundred dollars by the commissioner hearing the claim for each such case of delay." These fines are paid to the Second Injury Fund.

General Statutes § 31-289b provides that "Whenever an
CT Page 9903
employer wilfully fails to comply with the requirements of this chapter, the Attorney General may bring a civil action in the

superior court for the judicial district of Hartford-New Britain to enjoin the employer from conducting business in this state until the employer fully complies with the requirements of this chapter [568]." General Statutes § 31-284 (d) provides: "Any employer to whom a certificate of self-insurance has been issued pursuant to this section who fails or is unable to pay any compensation mandated by the provisions of this chapter, thereby requiring payment from the Second Injury Fund pursuant to section 31-355, shall be prohibited from self-insuring his liability under this chapter for a period of ten years from the date of the payment. The employer shall be required during the ten-year period to insure his full liability under this part, exclusive of any liability resulting from the terms of section 31-284b, in any stock or mutual companies or associations that are or may be authorized to take such risks in this state. Failure to so insure his liability shall result in the denial of the privilege of doing business in this state." Further, General Statutes § 31-326 provides that the chair of the workers' compensation commission has the authority to file a complaint with the insurance commissioner against any insurance company or self-insured employer if it is (1) conducting its business improperly; (2) dilatory in investigating and adjusting claims; (3) dilatory in making payments; (4) failing to comply with the provisions of chapter 568; or (5) failing to comply with the rules, methods, procedures, or forms adopted by the chair. If the chair makes such a finding, he shall notify the Insurance Commissioner, in writing, setting forth the facts, and thereupon the Insurance Commissioner shall hold a hearing, on reasonable notice. If the Insurance Commissioner finds the allegations to be true, he shall either suspend for a time or revoke the license of such insurance company or association to transact such business in the state, or in the case of a self-insured employer, the certificate of such self-insurance shall be, as to any future injuries, null and void. See generally Severino, Connecticut Workers' Compensation After Reforms, pp. 15-20, as supplemented. These sanctions, however, do not result in a monetary payment to the claimant.

[fn5] See also *Byars v. Whyco Chromium,*
14 Conn. Workers' Comp. Rev. Op. 386, 2187 CRB-5-94-10 (Oct. 5, 1995), affirmed, 40 Conn. App. 938, 671 A.2d 865 (1996);
*Sanchez v. Steben's Motors,* 3247 CRB-6-96-1 (12-24-96);
*Artkop v. East Coast Office Systems, Inc.,* 2252 CRB-2-94-12 (8-29-96); *Wheeler v. Bender Plumbing Supply of Waterbury, Inc.,*
10 Conn. Workers' Comp. Rev. Op. 140, 141, 1186
CT Page 9904
CRD-5-91-3 (June 5, 1992).

[fn6] General Statutes § 31-300 provides in pertinent part: "As soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of his findings and award. The commissioner shall, as part of the written award, inform the employee or his dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. He shall retain the original findings and award in his office. If no appeal from his decision is taken by either party within ten days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the Superior Court. The court may issue

execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the Superior Court; and, upon the filing of an application to the court for an execution, the commissioner in whose office the award is on file shall, upon the request of the clerk of said court, send to him a certified copy of such findings and award."

[fn7] Where the General Assembly has intended to create a civil action for matters which would otherwise be cognizable by the Workers' Compensation Commission, it has done so expressly. See, e.g., General Statutes §§ 31-228, 31-289a, 31-289b, 31-290c, 31-292; see also Second Injury Fund v. Lupachino, 45 Conn. App. 324, 695 A.2d 1072, (1997).

[fn7a] The statutory antecedents to General Statutes § 31-300, for example, have contained a provision for the award of interest on account of delay in the payment of workers' compensation benefits since 1919. See 1919 Public Acts ch. 142 § 12. However, "a subsequent legislative act may throw light on the legislative intent of an earlier related act." *Baker v. Norwalk,* 152 Conn. 312, 317, 206 A.2d 428 (1965).

In the last 30 years, General Statutes § 31-300 has been ended to permit an award of attorney's fees where the employer or insurer has unreasonably contested liability; 1967 Public Acts 842 § 10; to prohibit the discontinuation of workers' compensation payments to a claimant who claims his incapacity continues unless the commissioner is notified and approves; 1975 Public Acts No. 75-122; to provide for payment of 12% interest in cases of undue delay in payments of compensation and to provide for a presumption of undue delay if payments are not made within a specified period of time; 1979 Public Acts No. 79-80; to provide for an exception to the presumption if a notice to contest the claim is timely and properly filed; 1984 Public Acts No. 84-299 § 3; to provide for an award of attorney's fees in cases of undue delay in the adjustment or payment of compensation, and for the return of wrongful payments made to an
CT Page 9905
injured person; 1988 Public Acts No. 88-106, § 3; to increase the rate of interest on awards from 6%, wherever the statute so provided, to 10%; 1989 Public Acts No 89-17; and then to substitute therefor the rate of interest stated in General Statutes § 37-3a; 1989 Public Acts No. 89-316 § 1; and to direct the payment of partial incapacity benefits for employees whose total incapacity benefits are discontinued but who is awarded partial incapacity benefits, commencing the day after total incapacity payments are discontinued. 1993 Public Acts No. 93-228 § 13.

[fn8] See Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 3, 1979 Sess., pp. 713, (remarks of Rep. Dominick Sieszkowski), pp. 750-52 (testimony of Dominick Badolato); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1984 Sess., pp. 186-187 (remarks of Mr. Paul Gerrou and Representative William Kiner), pp. 211-13 (testimony of Mr. Lee Arnold), pp. 223-24 (testimony of Mr. Grady), pp. 228-31 (testimony of Ms. Betty Webber), pp. 253-55 (testimony of Attorney Robert Carter), pp. 263-64 testimony of Attorney John Kissel); 27 H.R. Proc., Pt. 9, 1984 Sess., pp. 3258, remarks of Representative William Kiner); Conn. Joint

Standing Committee Hearings, Labor and Public Employees, 1988 Sess., pp. 249-52 (testimony of Mr. Ed Sikorski), pp. 264-265 (testimony of Ms. Joy Boylan); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1989 Sess., pp. 495-96 (testimony of Mr. Richard Roberts); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 6, 1993 Sess., pp. 1347 (testimony of Mrs. Cynthia Lee); Conn. Joint Standing Committee Hearings, Labor Committee, 1959 Sess., pp. 143, 147 (remarks of Labor Commissioner Ricciuti), p. 159 (Remarks of C. Carpenter); Conn. Joint Standing Committee Hearings, Labor Committee, Pt. 1, 1957 Sess., pp. 260-61 (Remarks of Mr. Carmen Romano, United States Steel Workers of America).

[fn9] See Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 3, 1979 Sess., p. 862 (printed statement of Louis J. Zebedeo, vice president of The Associated General Contractors of Connecticut, Inc.); 22 S. Proc., Pt. 5, 1979 Sess., p. 1434-35 (remarks of Rep. John Matthews); Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1988 Sess., pp. 256-59 (testimony of Attorney Janet Spegele, Assistant Counsel for the Connecticut Business and Industry Association), pp. 262-63 (testimony of Theresa Twigg of the
CT Page 9906
Insurance Association of Connecticut); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1989 Sess., p. 430-31 (testimony of Robert Kehma, representative of Insurance Association of Connecticut), pp. 534, 538A (prepared statement of Kyle L. Ballou, Assistant Counsel, Connecticut Business and Industry Association); Conn. Joint Standing Committee Hearings, Labor Committee, 1959 Sess, pp. 140-41 (Remarks of Rep. Terrell), pp. 161 (Remarks of Mr. Fred Waterhouse), p. 168-69 (Remarks of Mr. W Reid), pp. 171, 173 (Remarks of Attorney J.R. Regnier), pp. 179, 180-81 (Statement of Mr. Hackett, Naugatuck Valley Industrial Coucil), pp. 185-86 (Remarks of Mr. S. Jankura), pp. 186-87 (Remarks of Mr. Robert Asch); Conn. Joint Standing Committee Hearings, Labor Committee, Pt. 1, 1957 Sess., pp. 273-75 (Remarks of Mr. J. R. Ranier, Association of Casualty and Surety Companies), p. 278 (Remarks of Mr. H.R. Bowman, Chairman, Industrial relations Committee, Bridgeport Manufacturers Association).

[fn10] See Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 6, 1993 Sess., pp. 1236-69, 1306-88, 1448-72, 1731-33, 1782-96; 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6188-90 (remarks of Representative Lawrence Cafero), pp. 6195-96 (remarks of Rep. Ronald San Angelo), pp. 6203-05 (remarks of Representative Lenny Winkler), pp. 6206-08 (remarks of Representative John Metsopoulos), pp. 6213-14 (Remarks of Representative Peter Villano), pp. 6325-26 (remarks of Representative Leslie Young), pp. 6326-28 (remarks of Representative Robert Ward), pp. 6328-29 (remarks of Representative Philip Prelli), pp. 6329-30 (remarks of Representative gene Gavin), pp. 6336-37 (remarks of Representative Mary Eberle), pp. 6339-41 (remarks of Representative Barbara Ireland), pp. 6342-47 (remarks of Representative Edward Krawiecki); pp. 6347-49 (remarks of Representative Thomas Luby); 36 S. Proc., Pt. 11, 1993 Sess., pp. 3848-56 (remarks of Senator Michael Meotii), pp. 3861-64

(remarks of Senator William Aniskovich), pp. 3865-70 (remarks of Senator Louis DeLuca), pp. 3877-79 (remarks of Senator M. Adela Eads), 3937-38 (remarks of Senator Kevin Sullivan).

[fn11] See 22 H.R. Proc., Pt. 8, 1979 Sess., p. 141 (remarks of Representative Richard Balducci); 22 S. Proc., Pt. 5, p. 1434 (remarks of Rep. Michael Skelley), pp. 1434-35 (remarks of Rep. John Matthews); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, pp. 140-43 (testimony of
CT Page 9907
Commissioner John A. Arcudi), pp. 143, 145 (testimony of Workers' Compensation Administrator Richard Nichol), pp. 231, 234-35 (testimony of Mr. James Parent); Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1989 Sess., pp. 429-431 (testimony of Robert Kehmna, representative, Insurance Association of Connecticut), pp. 452-53, 455 (testimony of Kyle Ballou); 32 H.R. Proc., Pt. 5, 1989 Sess., pp. 1623-25 (remarks of Representative Joseph Adamo).

[fn12] The legislative history of General Statutes § 31-300 is replete with references to a "penalty" or "punishment". For example, in commenting on Substitute House Bill 5852 which when enacted became Public Act No. 88-106, Representative Joseph Adamo stated: "I think that the entire concept here is to punish an insurer or employer who unduly delays a claim or the [ad]judication of that claim. . . ." 31 H.R. Proc., Pt. 6, 1988 Sess., pp. 1857-58. See also Conn. Joint Standing Committee Hearing, Labor and Public Employees, 1988 Sess., pp. 215-16 (testimony of Commissioner John Arcudi); 32 H.R. Proc., Pt. 5, 1989 Sess., pp. 1623-1625 (remarks of Representative Joseph Adamo); 36 H.R. Proc., Pt. 18, 1993 Sess., pp. 6141, 6143, 6253-54 (remarks of Representative Michael Lawlor); Conn. Joint Standing Committee Hearings, Labor Committee, 1959 Sess., pp. 121, 125-126 (Remarks of Margaret Driscoll, State AFL-CIO counsel).

[fn13] In *National CSS, Inc. v. Stamford,* 195 Conn. 587, 489 A.2d 1034 (1985), the plaintiff brought an action for a refund of personal property taxes on personal property it had leased from another company. *Id.,* 588. After it paid the taxes, the plaintiff became aware that under the lease agreement it was not obligated to do so. The common law provided an equitable remedy for the illegal overvaluation of property; *Cohn v. Hartford,* 130 Conn. 699, 703, 37 A.2d 237 (1944); and for the recovery of money paid "if the tax was illegal and unjust." *Seeley v. Westport,* 47 Conn. 294, 299 (1879) (injunction); see also *Adam v. Litchfield,* 10 Conn. 127, 131 (1834) (assumpsit). The court in *National CSS, Inc.* held that General Statutes §§ 12-57, 12-129 provided the plaintiff with an adequate remedy but that the "plaintiff simply failed to take advantage of this statutory remedy in a timely manner. . . ." *National CSS, Inc. v. Stamford, supra,* 195 Conn. 597.

The rule was again cited in *Grey v. Coastal States Holding Co.,* 22 Conn. App. 497, 578 A.2d 1080, cert. denied, 216 Conn. 817,
CT Page 9908
580 A.2d 57 (1990). In that case, the owners of two condominium unit owners sought an injunction and damages from the owners of three other units in a five unit residential condominium. The defendants had expanded the size of their units

in violation of the condominium agreement. *Id.,* 502. The Appellate court affirmed that "[t]he defendants essentially appropriated air space as well as square footage of land that did not belong to them individually, but belonged to them in common with the other unit owners. The plaintiffs are, therefore, entitled to damages for the property taken from them." *Id.,* 504. The issue raised on appeal by the plaintiffs pertained to the proper measure of damages. "The plaintiffs claim that they [were] entitled to a proportionate share of the value of the additions to the defendants' units, on the theory that the defendants have been unjustly enriched." *Id.,* 505. But, observed the court, "General Statutes § 47-212 (a) . . . provides that any remedy should be aimed at putting the plaintiffs in as good a position as they would have been in had the agreement not been breached." *Id.* Invoking the rule quoted above in *National CSS, Inc. v. Stamford,* supra, 195 Conn. 597, the court held that "the appropriate remedy here would be to place the plaintiffs in the position they would have been in but for the breach. The appropriate amount of damages, therefore, relates to the value of the elements taken by the defendants. It does not relate to the value of those elements plus the value of any enhancement to them where the value of the enhancement was supplied by the defendants themselves."

In *Grey,* however, there was "no statutory scheme for the recovery of a benefit." To be sure, there was a statutory scheme, the Common Interest Ownership Act, General Statutes § 47-200 et seq. But the statute cited by the court as authority for its holding that the equitable remedy of unjust enrichment was preempted simply provided: "The remedies provided by this chapter shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed. . . ." General Statutes § 47-207 provided, moreover, that the principles of law and equity applied to the statutory scheme except to the extent they were inconsistent with it. *Grey,* therefore, did not present a case where there was a statutory scheme for the recovery of a benefit. Indeed, *Grey* was an action at common law.

[fn14] Even if there were causes of action at common law which embraced the plaintiffs' claims, it is not at all clear that the
CT Page 9909
remedies provided in General Statutes § 31-295 (c), 31-296, 31-300 and 31-303 would not be "adequate" with the ambit of the rule stated in *National CSS, Inc. v. Stamford, supra,* 195 Conn. 597. This is because our Supreme Court has held that "`[i]t is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate; see, e.g., *Connecticut Life & Health Ins. Guaranty Assn. v. Jackson,* [173 Conn. 352, 357, 377 A.2d 1099 (1977)]; and an administrative remedy, in order to be "adequate," need not comport with the plaintiffs' opinion of what a perfect remedy would be.' *Connecticut Mobile Home Assn., Inc. v. Jensen's, Inc.,* 178 Conn. 586, 590, 424 A.2d 285 (1979); see also *Savoy Laundry, Inc. v. Stratford,* 32 Conn. App. 636, 630 A.2d 159, cert. denied, 227 Conn. 931, 632 A.2d 704 (1993) (administrative remedies available to plaintiff under statute not inadequate, despite fact that complaint sought relief, including punitive damages and attorney's fees, not available under statutory scheme, where essence of plaintiff's claim involved matter within authority vested in administrative agency)." *Hunt*

*v. Prior,* 236 Conn. 421, 434-435, 673 A.2d 514 (1996). As the New Mexico Supreme Court recently stated about its own statute, enacted in response to the Court having previously divined a private cause of action: "Although this penalty may not be a great amount when the amount of the claim is small, it provides sufficient deterrence to prevent an insurer from denying benefits in bad faith and enforces the public policy against the bad faith handling of workers' compensation claims. In addition, although this Section may not provide a recovery for emotional distress or an award of punitive damages, we previously have held that `the employer or insurer's liability is limited to that set forth in the Act.' . . . Thus we hold that Section 52-1-28.1 does provide an adequate remedy and that an independent cause of action for bad-faith refusal to make medical payments is barred. . . ." *Cruz v. Liberty Mutual Ins. Co.,* 119 N.M. 301, 889 P.2d 1223, 1226 (1995); see also *Zurich Ins. Co. v. Mitchell,* 712 S.W.2d 340, 342 (Ky. 1986) ("[T]hat the act does not provide for pain and suffering is also no basis upon which a cause of action may lie."). However, the court does not reach this issue.

[fn15] Thus, the Supreme Court has refused to imply a credit in favor of an employer for proceeds of a settlement between the employee and a third party tortfeasor, where the employer had failed to timely intervene in an action between those parties or to commence its own action against the tortfeasor, prior to the effective date of Public Act No. 93-228 § 7. *Libby v. Goodwin-Pontiac-GMC Truck, Inc.,* 241 Conn. 170, 695 A.2d 1036 (1997). The
CT Page 9910
court has declined to carve out an exception for highway defect actions to the employer's general right to reimbursement from third party tortfeasors. *Quire v. Stamford, supra,* 231 Conn. 370. It has refused to permit an uninsured motorist action against a self-insured employer in derogation of the exclusivity provisions of the Workers' Compensation Act, prior to the effective date of Public Act No. 93-297. *Bouley v. Norwich, supra,* 222 Conn. 744. And, it has refused to infer a qualification to the employer's right to reimbursement in an action against a third party tortfeasor based on the negligence of the employer. *Durniak v. August Winter & Sons, Inc., supra,* 222 Conn. 775.

[fn16] There is no doubt that the word "fault" in General Statutes § 31-300, as well as in General Statutes § 31-288 (b), includes the intentionally tortious conduct alleged against the defendants in the plaintiffs' amended complaint. The reference in the statute to "fault" embraces all manner of wrongs. Thirty years before the word was written into the statutory ancestor of General Statutes § 31-300, one court observed: "`Fault is a big word. . . . It means that nothing should have been done that ought not to have been done . . . and that he should not have omitted anything that ought to have been done." *Central R. Co. v. Lanier,* 83 Ga. 587, 10 S.E. 279, 280 (1889); see *Teitell v. Unemployment Compensation Review Board,* 118 Pa. Commw. 406, 546 A.2d 706, 710 (1988) (fault "connotes an act to which blame, censure, impropriety, shortcoming or culpability attaches"); *Milwaukee County v. Department of Industry, Labor and Human Relations Commission,* 80 Wis.2d 445, 259 N.W.2d 118, 123 (1977) (same); *Continental Oil Co. v. Horsey,* 175 Md. 609, 3 A.2d 476, 478 (1939) ("The term `fault' has the meaning of bad faith, mismanagement, neglect of duty, or a deviation from prudence, rectitude or duty."); General Statutes § 42a-1-201 (16) ("`Fault'

means wrongful act, omission or breach."); cf. *Champagne v. United States*, 836 F. Sup. 684, 689 (D.N.D. 1992) (fault statutorily defined to include intentional torts); compare *Horman v. New Hampshire Ins. Co.*, 236 Kan. 190, 689 P.2d 837 (1984) (statutory language providing "not just cause or excuse for the failure of the employer or insurance carrier to pay" compensation, held to include insurer's intentional act of refusing to pay compensation).

[fn17] See *Ruiz-Dugue v. Greenwich Hospital*, 3267 CRB-7-96-2 (5-22-97); *Sanchez v. Steben's Motors*, 3247 CRB-6-96-1 (12-24-96); *Deoliveira v. Ross & Roberts, Inc.*, 3033 CRB-4-95-4 (12-13-96) ("the legislature has prescribed a remedy in § 31-300
CT Page 9911
C.G.S. for the unreasonable contest of liability by an employer or insurer: the allowance of a reasonable attorney's fee to the claimant. We do not believe that it would be appropriate to infer that an alternative remedy must be made available as well if the unreasonable contest has extraordinary detrimental effects."); *Artkop v. East Coast Office Systems, Inc.*, 2252 CRB-2-94-12 (8-29-96); *Kilton v. Cote & Sons, Inc.*, 2178 CRB-7-94-10 (4-23-96); *Tavares v. Noel*, 2010 CRB-7-94-3 (3-8-96); *Byars v. Whyco Chromium*, 14 Conn. Workers' Comp. Rev. Op. 386, 2187 CRB-5-94-10 (Oct. 5, 1995), aff'd., 40 Conn. App. 938, 671 A.2d 864 (1996); *Palmateer v. Stop & Shop Companies, Inc.*, 2218 CRB-2-94-11 (9-6-95); *Liano v. City of Bridgeport*, 2033 CRB-4-94-5 (7-25-95), cert. denied, 238 Conn. 906, 679 A.2d 1 (1996); *Stryczek v. State of Conn./Mansfield Training School*, 1765 CRB-2-93-6 (5-4-95); *Grillo v. Prestige Enterprises*, 1704 CRB-1-93-4 (4-25-95); *Pelletier v. M & M Builders, Inc.*, 1740 CRB-5-93-5 (4-19-95); *Marchitto v. Hamden Upholstery Co.*, 1558 CRB-3-92-11 (6-8-94); *Versage v. Kurt Volk, Inc.*, 1313 CRD-3-91-10 (11-17-93); *Petta v. Waterbury Hospital*, 1310 CRD-5-91-9 (8-23-93); *Wheeler v. Bender Plumbing Supply*, 1186 CRD-5-91-3 (6-5-92); *Miner v. Town of Watertown*, 971 CRB-5-90-1 (4-28-92); *Watson v. American Cyanamid*, 911 CRD-8-89-8 (3-1-91); *Garfitt v. Pfizer, Inc.*, 742 CRD-3-88-6 (8-11-89); *Tartakovsky v. Sohmer/Pratt & Read*, 666 CRD-8-87 (8-9-89); *Beauregard v. Hartford Hospital*, 603 CRD-1-87 (4-21-89); *Hicks v. State, Department of Administrative Services*, 429 CRD-5-85 (2-23-89), affirmed, 21 Conn. App. 464, 573 A.2d 770, cert. denied, 216 Conn. 804, 577 A.2d 716 (1990); *McGloin v. Gateway Industries*, 618 CRD-1-87 (7-26-88); *Carlino v. Danbury Hospital*, 357 CRD-7-84 (7-21-88); *Delcarmine v. Fire Prevention Service, Inc.*, 311 CRD-7-84 (6-27-88); *Whitney v. Lapoint Garden Center*, 497 CRD-7-86 (4-29-88); *Carpentino v. Perkins Trucking Co.*, 5 Conn. Workers' Comp. Rev Op. 40, 42-43, 488 CRD-3-86 (April 6, 1988), affirmed, 18 Conn. App. 810 (1989), 556 A.2d 1063 (per curiam); *Neumann v. Southern Connecticut Gas Company*, 265 CRD-4-83 (5-8-87); *Marino v. City of West Haven*, 240 CRD-3-83 (3-16-87); *O'Leary v. City of New Britain*, 236 CRD-6-83 (12-2-86); *Davis v. Dwight Building Company*, 129 CRD-3-82 (5-29-84); *Robinson v. Allied Grocers Cooperative, Inc.*, 1 Conn. Workers' Comp. Rev. Op. 132, 135, 68 CRD-1-81 (July 13, 1982), affirmed, 39 Conn. Sup. 386, 465 A.2d 342 (1983).

[fn18] The *Carpentino* court also held that the plaintiff could maintain a CUTPA claim against his employer's insurer. This aspect of *Carpentino* has probably been overruled by *Mead v.*
CT Page 9912

*Burns,* 199 Conn. 651, 509 A.2d 11 (1986).

[fn19] In *Coolick v. Windham,* 7 Conn. App. 142, 508 A.2d 46 (1986), the plaintiff sought damages for his self-insured municipal employer's bad faith failure to pay a worker's compensation award. When the defendant moved to dismiss the action on the grounds that the matter lay within the exclusive jurisdiction of the commissioner, the plaintiff argued that he sought damages pursuant to 42 U.S.C. § 1983. In support of that argument, the plaintiff alleged "that he has been deprived of a property interest, i.e., his entitlements under the Workers' Compensation Act." *Id.,* 145. The Appellate Court disagreed. Citing, inter alia, General Statutes §§ 31-288, 31-300, the court stated that the plaintiff had "opted to bypass these state procedures which provide fully for due process of law. Our Supreme Court has expressly held that no private right of action arises out of an employer's failure to conform to the provisions of the Workers' Compensation Act. *Hoard v. Sears Roebuck & Co.,* 122 Conn. 185, 192-93, 188 A. 269 (1936).

"The established state procedures are adequate, fully protect the rights of the employee and vest exclusive jurisdiction to hear compensation claims with the commissioner. It is well settled that workers' compensation is the exclusive remedy for an employee seeking redress for work related injuries. *Velardi v. Ryder Truck Rental, Inc.,* 178 Conn. 371, 375, 423 A.2d 77 (1979)." *Coolick v. Windham, supra,* 7 Conn. App. 148.

Nor is Article I § 10 of the Connecticut constitution implicated here. See generally discussion in *Moore v. Ganim,* 233 Conn. 557, 573-574, 660 A.2d 742 (1995). Prior to 1818, there was no cause of action for additional damages for refusal to pay damages owing for trespass on the case or otherwise.

[fn20] In *Carpentino v. Perkins Trucking Co.,* 5 Conn. Workers' Comp. Rev Op. 40, 42-43, 488 CRD-3-86 (April 6, 1988), affirmed, 18 Conn. App. 810, 556 A.2d 1063 (1989), the Compensation Review Division remanded the case to the commissioner for the award of interest and attorneys' fees pursuant to General Statutes § 31-300 because the insurer had improperly discontinued benefits.

[fn21] But see *Cianci v. Nationwide Insurance Co.,* 659 A.2d 662, 665 (R.I. 1995) (holding that a bad faith cause of action against an insurer could not be based on Rhode Island G.L. 1956 (1986 Reenactment) § 28-36-5, which is similar to Connecticut General
CT Page 9913
Statutes § 31-340); see also *Stump v. Commercial Union,* 601 N.E.2d 327, 333 (Ind. 1992).

[fn22] Although the plaintiffs invoke CUIPA against all defendants, there is nothing in the General Statutes that suggests that CUIPA applies to self-insured employers such as the Diocese and Sacred Heart.

[fn23] The plaintiffs' complaint does not allege the tort of outrage. See Restatement (Second) Torts § 46. Nor does the complaint allege that any of the defendants stepped out of its normal role as employer, insurer or workers' compensation respondent. The seminal case in which this occurred is *Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 498 P.2d 1063.

102 Cal.Rptr. 815 (1972). In *Unruh,* it was alleged that an investigator hired by the insurance carrier befriended the claimant, and beguiled her into becoming romantically interested in him. Then, during an excursion to Disneyland, the investigator enticed the claimant into crossing a rope bridge and engaging in other physically demanding activities. Unbeknownst to the claimant, another investigator filmed her while she did so. U. Upon discovering at a subsequent hearing how she had been deceived, the claimant suffered a physical and mental breakdown requiring hospitalization.

    Here, by contrast, "[a]s reprehensible as [defendants'] conduct may have been, it concerned [if,] how and when benefits are paid - something manifestly within a workers' compensation insurer's role." *Mitchell v. Scott Wetzel Services, Inc.,* 227 Cal.App.3d 1474, 278 Cal.Rptr. 474, 478 (1991). "In this case there were no affirmative acts of harassment." *Zurich Insurance Co. v. Mitchell,* 712 S.W.2d 340, 343 (Ky. 1986).

---

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved